### BALFE et al. v. TILTON.

#### (District Court, D. New Hampshire. August 14, 1916.)

#### No. 373.

EXECUTORS AND ADMINISTRATORS ⬅506(1)—SUIT FOR ACCOUNTING BY EXECUTOR—BURDEN OF PROOF.

    In a suit in equity for an accounting by an executor, where as a preliminary question it was determined that his administration of the estate was fraudulent, and the case was referred to a master for an accounting, the burden of proof rested on defendant to show that he did not profit by transactions by which property of the estate was transferred to him.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2175; Dec. Dig. ⬅506(1).]

In Equity. Suit by Mary A. Balfe, administratrix, and another, against Genieve E. Tilton. On motions to confirm and to set aside report of master. Decision reserved.

See, also (D. C.) 198 Fed. 704.

A. H. Holmes, of New York City, for plaintiffs.
Foster & Lake, of Concord, N. H., for defendant.

ALDRICH, District Judge. This cause is now submitted upon motions which raise the question whether the report of the master, John E. Allen, shall be confirmed or rejected and set aside. Upon proceedings prior to the appointment and the hearings before Mr. Allen, certain findings of fact had been made by a former master, and upon hearings the findings had been confirmed in respect to the purposes for which they had been made.

The various hearings before the court, and before examiners and masters, were under a bill in equity in which relief was sought upon the general ground that Charles E. Tilton, who was executor of his brother Alfred's estate, had fraudulently subverted interests which belonged to Alfred's widow and daughter. Under the bill, which asks for discovery and an accounting, it became necessary, under the pleadings, to determine, as a preliminary question, whether certain releases, which had been executed by the widow of Alfred, were fraudulently obtained. Upon such ascertainments as were deemed proper, the releases were set aside as fraudulent.

The findings with respect to the releases executed by Louise Tilton, the widow of Alfred, were made by James P. Tuttle, as master, under a commission which defined the duties of such master as not requiring a hearing with the scope which would ordinarily be adopted for purposes of strict accounting, but a scope sufficiently broad to cover investigations with reference to the value of the interests of Alfred at the time of his death and at the time of the supposed releases, so far as it was thought that property values reasonably bore upon the question whether Louise was overreached in the supposed settlement between Charles E. Tilton, as executor, and the widow, Louise, and her daughter. Under such a commission, and upon such investigations and hearings as the parties sought, Mr. Tuttle reported that Charles had fraudulently obtained title to a large amount of real estate belonging to his brother, conservatively worth not less than $100,000, that his administration of the estate was fraudulent, that the releases were obtained by fraud, and that the plaintiffs were entitled to an accounting. After Mr. Tuttle's report came in, the plaintiffs moved for a decree for $100,000, and the motion was denied, upon the ground that the findings of Mr. Tuttle were not for the purpose of definitely establishing rights under a strict accounting, but for the purpose of ascertaining whether the releases should stand across the path of the plaintiffs, and thus put out of contention all questions in respect to the right of the plaintiffs to have an accounting. The report of Mr. Tuttle was accepted and confirmed in respect to such questions, the releases were set aside, an accounting was ordered, and the question of discovery was held in abeyance.

The commission to Mr. Tuttle, and his findings thereunder, were manifestly not for the purpose of establishing ultimate rights under an accounting, but for the purpose of determining whether the release, which lay across the path of the plaintiffs, should be removed, to the end that an accounting might be had.

Under certain explanations and orders, Thomas D. Luce was appointed master, and after an incomplete hearing before him he asked to be relieved from the case, and an order, as it is remembered, was entered accordingly. Subsequently, by agreement of the parties, John E. Allen was appointed master to state the account, and his report is now before me upon motions to which I have referred.

Under such proceedings as had been had before the court and the prior master, and under a decree appointing another master for the definitely expressed purpose of taking an account, it would ordinarily

be supposed that such master would proceed to that end, without assuming responsibility in respect to matters involved in the prior interlocutory proceedings, which include findings and decrees. Still the master in this case seems to assume a broader responsibility than is ordinarily assumed by a master. It was entirely beyond his province to criticise a finding of Mr. Tuttle, a former master, and say that it was based upon unsupported conjecture. The criticism of Mr. Tuttle's report was not pertinent to any issue before Mr. Allen; and beyond what is involved in the idea of the master's criticism of the findings of a former master in the same proceedings, is the idea that it discredits a finding which was largely the foundation for the decree setting aside the releases.

Under conditions of established fraud, certain intendments and inferences are sometimes warranted. Intendments and inferences sometimes naturally and necessarily spring from the circumstantial situation; therefore it is not for one tribunal, and especially a tribunal not charged with the duty of reviewing a former finding, to characterize it as based upon unsupported conjecture.

It is quite true that the accounting, contemplated by the submission to Master Allen, was an equitable accounting, with explanations of the theory upon which the ascertainments were made. That, of course, meant that the accounting by Mr. Allen should be an equitable one, and an ascertainment of the fact whether there was anything in the Charles Tilton estate which belonged to the estate of Alfred. The discharge of the duty under such a submission did not require the strong characterizations against the findings of the prior master, and indirectly of the decrees of the court thereon.

The report of Mr. Allen is more like an opinion by a tribunal under the responsibility of writing an opinion in respect to ultimate rights than a statement of an equitable account by a master in equity.

If it be true that Charles Tilton's administration of the trust existing between himself, as executor of his brother's will, and the widow and daughter of his brother, was fraudulent throughout, it results that there is some burden upon the defendants to show that the Charles Tilton estate has not reaped any harvest by virtue of the fraud. The fact that there was a fundamental wrong in Charles Tilton's administering a trust, as between his own interests and the interests of others, goes far in the direction of creating the burden of showing that there is nothing in his estate that belongs to the estate of Alfred.

Under such circumstances of trust relations, the evidence in this case which has been submitted to me from time to time, consisting of letters written by Charles to Louise, and of explanations and transactions, and descriptions of the manner in which proceedings were instituted and carried along, has created a very strong impression in my mind, not only that Charles intended to overreach Alfred's widow and her child, but that he so managed Alfred's interests as to benefit by it to their damage.

The character of the letters, the manner of doing business, and the nature of the interviews between Charles and Louise are very weighty in sustaining this view. This does not mean that the estate of Charles

should be wronged by any general considerations of fraud, and there was no occasion for the master's interjecting into his report the idea that one guilty of fraud should not be denied equal protection of the law, or any expressions as to what justice requires. The master's duty was to state the account and the theory upon which it was made.

As observed, the report of Mr. Allen does not so far relieve my mind as to justify a final decree against the plaintiff. The report, notwithstanding certain disclaimers in respect to former findings, seems to be constructed upon the theory that there is, under the circumstances of fraud, no burden upon the defendant, and, indeed, in places it is quite argumentative in respect to the view that proceedings, in the various jurisdictions, of prima facie regularity were in fact honestly instituted, and this notwithstanding the premises, already assumed as correct ones by the court and former master, and by Master Allen, that the transactions, from their inception, were tainted with fraud.

As I view this case, it does not necessarily involve any question either of collateral or of direct attack upon proceedings in other jurisdictions. It is more a question whether Charles benefited through the instrumentalities of such proceedings, and thus it, perhaps, becomes in an equitable proceeding of this kind, after such a lapse of time, a question as to the value of the interests of Alfred of which there was a general intent to subvert.

It is not quite clear what is intended by page 17 of Mr. Allen's report. If it is meant that Charles is entitled to hold certain advantages, under an equitable accounting, in respect to the values of the Colorado and the New York real estate under the $25,000 transaction relating to the releases, I should not want to approve of such a theory until more is known about it. As the transaction is declared void by reason of fraud, it does not appear plain that Charles' estate should be credited with the $25,000, and also by reason of the transaction acquire advantages in respect to the values of unsold properties.

My attention has not been called to requests submitted at the hearing before Mr. Allen, but I had not supposed that it was for the master to make any rulings upon any question in respect to whether the account rendered in pursuance of the order of court was in conformity thereto.

Although it seems that the master traveled far afield in his comments upon prior proceedings and in respect to general questions of law, I am not at this time going to set the report aside, nor am I going to confirm it. Of course, it is open to the tribunal charged with final decision in a proceeding in equity in such a situation as this to confirm a report, reject it, or to hold it and its findings for its proper weight in such subsequent proceedings as may seem equitable.

It does not seem to me to be a correct view, under circumstances of fraud, that equity will lean very far in order to exonerate a wrong-doer in respect to values, upon the ground that it should not be assumed, that he understood the law of implied, resulting, and constructive trusts. On the contrary, the more equitable view would have reference to the value of the things subverted under wrongful intentions, and

this quite independent of direct or collateral attack upon judgments of other jurisdictions.

The transactions of Charles being tainted with wrongful intent, the indebtedness claim of $24,675.28 presented in the Colorado courts is under suspicion, and is not necessarily res judicata as against these plaintiffs, and the burden of attack would not necessarily rest upon Alfred's widow and child, yet the master sustains the claim of Charles for $24,675.28, put up in the Colorado courts in his own behalf, against the brother's interests, as correct in equity, upon the ground that there is nothing in the record to disprove its merits. Until more is known about this, I cannot approve of this theory or this finding.

If Charles Tilton's dealings with the widow were prompted by wrongful intent, and if the monthly installments, amounting to something like $42,000, were made for the purpose of keeping her along and lulling her into a feeling of security, to the end that her interests and her child's might be more effectually absorbed by Charles, it would, perhaps, be a question whether an equitable accounting would restore these sums.

It would seem, in view of the whole situation, that further information should be had with respect to the $20,000 legacy in Alfred's will.

It must be understood in this case that I have not only to weigh my own impressions, but to give proper weight to the findings of the two masters, who seem to hold different views in respect to the true equitable status between these parties.

In conclusion, the report of Master Tuttle sustains the status heretofore decreed; that of Master Allen is neither approved nor altogether rejected. I am not yet satisfied how this case should be decided, and I am not going to enter a decree until I know more about it.

I have doubts about the correctness of some of the theories and some of the findings of Master Allen. Under such circumstances, and without intimating any definite or fixed conclusions, I will hear the parties further, and, when I feel confident that I understand how the case should be disposed of, will decide it upon my own responsibility, aided, of course, by the investigations made by the masters.

There is an old theory that the conscience of a chancellor shall be satisfied before he decides. I am not quite sure how far that theory holds good in modern philosophies, but it is probably correct to say that a master's report in equity has not quite the binding force of that of a master's report in an action at law.